CORPORACIÓN AZUCARERA SAURÍ & SUBIRÁ, Petitioner *v.* TAX COURT OF PUERTO RICO, Respondent; RAFAEL BUSCAGLIA, TREASURER OF PUERTO RICO, Intervener.

No. 185.   Argued May 6, 1948.—Decided July 19, 1948.

---

*Leopoldo Tormes García* for petitioner. *Luis Negrón Fernández, Attorney General* and *Edgar S. Belaval,* special counsel for the Department of Justice, for intervener, respondent in the main action.

MR. JUSTICE MARRERO delivered the opinion of the Court.

On or about October 2, 1944, the Treasurer of Puerto Rico sent to Corporación Azucarera Saurí & Subirá notices of income tax deficiencies for the taxable years which ended during the period from July 31, 1934, to July 31, 1941, inclusive. The taxpayer timely requested a reconsideration and an administrative hearing of the deficiencies thus notified to it. The Treasurer granted the hearing sought and after hearing the petitioner, made a new determination and fixed in $4,705.25, including interest, the deficiency for the taxable year ended on July 31, 1941, which was originally assessed at $13,243.90. Feeling aggrieved by that decision, the petitioner appealed to the Tax Court of Puerto Rico, after having filed the corresponding bond with the Treasurer. The Tax Court heard ample evidence and, on October 14 of the last year, rendered a decision sustaining several of the items claimed by the petitioner and rejecting, for the year 1941, the deduction of $14,047.72 claimed as depreciation of the factory buildings and appurtenances. The petitioner thereupon resorted to this Court, and we issued a writ of certiorari pursuant to the provisions of § 5 of Act No. 169 of May 15, 1943 (Sess. Laws, pp. 600 and 610).

The petitioner, in its petition and in the memorandum filed in support thereof, urges that the respondent tribunal erred "in sustaining the action of the Treasurer regarding the rejection of the depreciation claimed in the buildings and appurtenances of the factory (Central Constancia), in the sum of $14,047.72, for the taxable year which ended on July

31, 1941, as it failed to apply the provisions of § 32(a) (6) of the Income Tax Act."

Section 32(a) of the Income Tax Act [1] provides in its subdivision 6, as amended by Act No. 31 of April 12, 1941 (Sess. Laws, pp. 478, 522) the following:

"(6) A reasonable allowance for the exhaustion, wear and tear of property used in the trade or business, including a reasonable allowance for obsolescence, but no deduction shall be allowed under this subdivision, unless the exhaustion, wear and tear, or depreciation, clearly appears from the books of the taxpayer, if he keeps any, as sustained during the taxable year. *Provided,* That this shall not imply that the Treasurer shall continue to be obliged to accept the losses for said reasons appearing in the books; *Provided, further,* That the aggregate amount allowed for depreciation, exhaustion, wear and tear, shall never reduce the book value of the property to less than the fair value thereof at the end of each taxable year."

In the enclosure which accompanied the notice of deficiency for the above-mentioned year, with reference to the depreciation claimed by the taxpayer on Central Constancia, the Treasurer stated that he rejected the item of $14,607.72 "since the book value of the properties is less than the fair value according to the appraisal, . . ." The taxpayer contends that said offer erred in referring to the fair value of the properties according to the appraisal, since the said subdivision of § 32 only mentions "the fair value thereof (of the property) at the end of each taxable year," without referring in any way to the appraisal of the property.

It is really unnecessary to decide the question thus raised. It is a well-known legal principle that every tax assessment made by the Treasurer of Puerto Rico is presumed to be correct and that it is incumbent on the taxpayer to show by persuasive and authentic evidence that said assessment is erroneous. See *Mayagüez Sugar Co.* v. *Sancho, Treas.*, 64 P.R.R. 699, 700; *Rossi* v. *Tax Court*, 66 P.R.R. 405, 409; *A. Fernández Hno.* v. *Tax Court*, 66 P.R.R. 570,

[1] Act No. 74 of August 6, 1925 (Sess. Laws, p. 400).

572; *In re Glover-McConnell Co.*, 9 F. 2d 683; *United States* v. *Tillinghast*, 69 F. 2d 718, 722 and Mertens, Law of Federal Income Taxation, vol. 9, § 49.180, p. 163. Let us see, therefore, whether such presumption has been overcome.

The evidence introduced by the petitioner to controvert the assessment made by the Treasurer and to show that its contention was correct, mainly consisted in the testimony of Juan C. Villarini, a certified public accountant. The latter, on examination by counsel for the petitioner, testified as follows:

"Upon examining the nature of the above-mentioned items rejected by the Treasurer as depreciation, I noticed that the company, since the year 1918–1919 had followed the practice of computing the annual depreciation of its properies by the book value, after deducting the depreciation for the preceding year. That is, there were applied to this company the provisions of the bulletin, published by the Department of Finance, regarding depreciation and repairs, as to that part thereof which authorizes to include the annual depreciation in the property account instead of creating a separate reserve, erroneously taking each year as a deduction of the depreciation value. In other words, instead of merely crediting the annual depreciation on the books in accordance with the rate granted by the Treasurer, they took as a basis the book value for a year and substracted therefrom all the depreciation which had accrued in previous years. As a result of this, when reaching the year 1939, which is the first year covered by the deficiency, it was noted that the book value taken as a basis for the depreciation represented the net depreciated value, and in consequence thereof it was necessary to make an analysis of the original costs."

Upon being immediately cross-examined by counsel for the Treasurer, the witness answered:

"In order to reestablish the true value which later can be used as a basis for computing the depreciation and claiming it in the tax returns, we made an analysis from the year 1918 onward, determining the original costs; determining the various kinds of properties, taking into account the corresponding

improvements, the withdrawals and deposits by sale of properties, as well as the depreciation which should have been eliminated, and each withdrawn asset, and after having followed such procedure, the depreciation in value for the years 1938, 1939, 1940, and 1941 was determined. Then, applying the depreciation granted by the Treasurer to the taxpayer, we determined that by means of columns. First the rate of depreciation claimed in the return; the rate of depreciation which could be claimed in accordance with the bulletin issued by the Department of Finance and the rate of depreciation granted by the Treasurer. Then we proceeded to charge the depreciation on the three different bases in order to determine, first, the depreciation which the taxpayer claimed in its return, the amount which it could have claimed in accordance with the rates granted by the Treasurer and as to which there was no dispute, and then we established the difference between what was claimed in the return and what could have been claimed, and what the Treasurer allowed as depreciation in order to establish the depreciation claimed in the return short of the full amount."

Although other witnesses testified for the petitioner, there was no specific proof of the fair value of the properties. It was not sufficient to show what was the book value of the properties, or that the fair value given by the petitioner to the properties was the depreciated value thereof in accordance with the account books. We have already held that the result of subtracting from the original cost of a property its depreciation can not be the market value thereof. *Mayagüez Sugar Co.* v. *Sancho, Treas, supra.* What was relevant and pertinent was to show the fair value of the properties by means of persuasive and authentic evidence, which would overcome the presumption of correctness which the tax assessment made by the Treasurer has, independently of whether or not such determination were the fair value of the property in question.

Since the petitioner has failed to produce persuasive and authentic evidence regarding the fair value of the properties on which the depreciation for the year 1941 is claimed, the

presumption existing in favor of the Treasurer has not been overcome, and therefore the Tax Court acted correctly in rejecting such depreciation.

The decision appealed from should be affirmed.

Mr. Justice De Jesús did not participate herein.